Dewey S. DOWNEY, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 17, 2006.
Decided Dec. 19, 2006.

Richard H. Bergeman, III, Fleetwood, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Dewey Downey petitions for review of orders of the Unemployment Compensation Board of Review 1) that affirmed a referee's denial of benefits after concluding that he was ineligible for benefits pursuant to Sections 402(e) of the Unemployment Compensation Law (Law),[1] 43 P.S. §§ 802(e), which renders a claimant ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct in connection with his work; and 2) that affirmed a referee's determination that a fault overpayment of $5,137.00 was established pursuant to Section 804(a) of the Law, 43 P.S. § 874(a), based on Downey having received benefits based on false information regarding his separation from employment.

By notice of removal dated June 28, 2005, Downey was discharged from employment with the U.S. Postal Service based on the charge that he engaged in activity inconsistent with his claimed physical limitations. Downey applied for and was denied unemployment compensation benefits. At a hearing before a referee, Downey appeared pro se and testified on his own behalf. The Postal Service presented the testimony and investigation report of postal inspector Mike Brennan, and the testimony of distribution operations manager Drue Egner.

The facts as found by the referee are summarized as follows. Downey sustained a May 2002 work injury, returned to sedentary work in November 2003, and stopped working in December 2003 because the light-duty worked aggravated his symptoms. In June 2004, Downey requested a monthly allowance for the care and maintenance of his house; he stated that his physical limitations rendered him unable to do painting, plumbing, landscaping or carpentry work and that he was at risk of losing the house. In August 2004, based on anonymous information that Downey had been observed performing heavy work around his house (i.e., stripping the exterior of his house, climbing ladders, digging post holes, using a sledge hammer, and operating a gas-powered trimmer), the Postal Service initiated an investigation. Shown the postal inspector's surveillance of Downey performing the work at his home, Downey's physicians cleared him to return to work. Downey returned to light duty on May 4, 2005. He was discharged effective July 29, 2005. Downey testified that he thought his physical restrictions applied only to work activities and not to home.

The referee concluded that the Postal Service met its burden of proving that Downey engaged in activity that was inconsistent with his claimed physical restrictions. The referee rejected Downey's testimony and concluded that he failed to prove good cause or justification for his actions. On appeal, the Board adopted the referee's findings and conclusions and affirmed. The Board further credited the Postal Service's evidence and the testimony that the delay between the surveillance and discharge was attributable to the completion of the postal inspector's investigation, obtaining updated medical opinions based on the surveillance, and "pursuing discipline through proper channels."

■ Downey argues here that the Board erred in concluding that his actions

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended.*

constituted willful misconduct in that the record contains no evidence that he deliberately violated a rule, duty, or obligation toward the employer. He also argues that the Board capriciously disregarded the fact that he was discharged from employment after the employer permitted him to return to work in June 2005 with work restrictions; he contends that if the employer deemed his actions to be willful misconduct it would not have permitted him to return.[2]

■■■ Willful misconduct within the meaning of Section 402(e) includes behavior that evidences a willful disregard of the employer's interests, the deliberate violation of the employer's work rules, the disregard of standards of behavior that the employer can rightfully expect from its employees, or negligence indicating an intentional disregard for the employer's interest or the employee's duties or obligations. *Grieb v. Unemployment Compensation Board of Review*, 573 Pa. 594, 827 A.2d 422 (2003). The employer bears the burden of proving that a claimant engaged in willful misconduct for purposes of determining the claimant's eligibility for unemployment compensation. *Burger v. Unemployment Compensation ·Board of Review*, 569 Pa. 139, 801 A.2d 487 (2002). Once the employer establishes a prima facie case of willful misconduct, the burden shifts to the claimant to prove that his actions were justified or reasonable under the circumstances. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436 (Pa.Cmwlth.2000). Whether a claimant's actions rise to the level of willful misconduct is a question of law fully reviewable on appeal. *Burger*.

Although we have found no case that specifically addresses willful misconduct in the context of an employee's acceptance of total disability benefits based on a physical inability to work when the employee was in fact physically able to work, the courts of this Commonwealth have held that an employee's dishonesty or misrepresentation can exhibit a disregard of the employer's interests and disregard of standards of behavior that the employer can rightfully expect from its employees. *DeRiggi v. Unemployment Compensation Board of Review*, 856 A.2d 253 (Pa.Cmwlth.2004). Similarly, theft from an employer, such as filing false claims, failing to return mistaken overpayment, and receiving benefits based on misrepresented employment status, is a wrongful act exhibiting disregard for the employer's interests and standards of behavior that disqualifies an employee from receiving unemployment benefits. *Temple University v. Unemployment Compensation Board of Review*, 565 Pa. 178, 772 A.2d 416 (2001) (citing *Dept. of Navy v. Unemployment Compensation Board of Review*, 158 Pa.Cmwlth. 605, 632 A.2d 622 (1993); *Spencer v. Unemployment Compensation Board of Review*, 145 Pa.Cmwlth. 134, 602 A.2d 484 (1992); *Abbey v. Unemployment Compensation Board of Review*, 50 Pa.Cmwlth. 323, 413 A.2d 3 (1980)); *see also Suchter v. Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 1, 405 A.2d 1075 (1979) (employee's falsifying a reason for his absence and improperly reporting his absence was willful misconduct).

In the present case, the uncontradicted evidence presented by the Postal Service supports the Board's conclusion that Downey's actions constituted willful misconduct. The employer's credited evidence establishes that while collecting total disability benefits and claiming a physical

---

2. Issues raised in the petition for review, but not briefed, are waived. Downey's brief does not address any issues related to the Board's decision ordering recoupment of the fault overpayment.

inability to perform even sedentary work for the Postal Service, Downey engaged in heavy physical work at his home. The evidence demonstrates that Downey was informed and aware that he was expected to return to work when he was no longer totally disabled. The referee discredited Downey's testimony that he thought his medical restrictions applied to his work activities, but not to his home activities. The Postal Service met its burden of establishing a prima facie case of willful misconduct with evidence that Downey accepted total disability benefits and remained out of work at a time when he was engaging in activities inconsistent with his claim of physical limitations attributable to his work injury. As a matter of law, we conclude that Downey's actions exhibited a disregard of the employer's interests and disregard of standards of behavior that an employer can rightfully expect from its employees such that his conduct rises to the level of willful misconduct.

Downey's second argument is that the Board capriciously disregarded the fact that he was discharged from employment after the employer permitted him to return to work in June 2005 with work restrictions. The fact that Downey returned to light-duty work with the Postal Service in May 2005 while the postal inspector was completing his investigation is not relevant to whether he was subsequently discharged for willful misconduct in connection with his work. To the extent that Downey inartfully attempts to argue the remoteness doctrine, the credited evidence adequately explains the delay between the Postal Service's surveillance and Downey's discharge. Only an unexplained, substantial delay between an employee's misconduct and the date of discharge precludes an employer from opposing a grant of benefits under the remoteness doctrine. *Raimondi v. Unemployment Compensa-*

*tion Board of Review,* 863 A.2d 1242 (Pa. Cmwlth.2004).

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 19th day of December 2006, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.