# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Fort Cherry Ambulance Service, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 642 C.D. 2021 |
| Respondent | : | Submitted: March 11, 2022 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  May 19, 2022

Fort Cherry Ambulance Service (Employer) petitions for review of the May 14, 2021 order of the Unemployment Compensation Board of Review (Board). The Board reversed a referee's decision finding Claimant ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law),[1] which provides that a claimant shall be ineligible for benefits in any week in which his unemployment is due to willful misconduct connected with his work. We affirm the Board's decision.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

## I. Background

William Wetherington (Claimant) worked for Employer from September 28, 2018, until his termination for willful misconduct on September 16, 2020. *See* Board Decision and Order, May 17, 2021 (Board Decision), at 3, Finding of Fact (F.F.) No. 1. Claimant applied for unemployment compensation (UC) benefits, which the UC Service Center granted on December 14, 2020. Employer appealed to a referee, and a hearing was held on February 1, 2021, at which both parties testified. *See generally* Notes of Testimony 2/1/2021 (N.T.).

At the hearing, Employer, who was represented by counsel, presented three witnesses and documentary evidence. *See* N.T. at 2-20. Claimant, proceeding *pro se*, testified on his own behalf. *See* N.T. at 21-30. Based on the testimony and documentary evidence presented, the referee determined Claimant's behavior fell below the standards of behavior Employer had the right to expect. *See* Referee's Decision/Order mailed February 5, 2021, at 2 (pagination supplied). Therefore, the referee concluded Claimant was ineligible for UC benefits under section 402(e) of the Law for willful misconduct and reversed the determination of the UC Service Center. *See id.*

Claimant appealed to the Board, which reversed the referee's decision and granted UC benefits by Decision and Order mailed May 14, 2021. *See* Board Decision at 3. Based on the record created before the referee, the Board made the following findings.

Claimant was employed by Employer as an Emergency Medical Technician (EMT) but expressed interest in attending classes to become an Advanced EMT. *See* F.F. No. 2; N.T. at 6-7. Employer was very much interested in Claimant attaining his Advanced EMT certification, since having Claimant

employed as an Advanced EMT would benefit the company more than having Claimant employed simply as an EMT. *See* F.F. No. 8; N.T. at 6-7. Thus, Employer adjusted Claimant's work schedule so that he would be able to both work and attend Advanced EMT classes, which Claimant accordingly did at his own expense. *See* F.F. Nos. 3-4; N.T. at 6-7, 21. Claimant successfully completed his Advanced EMT certification. *See* F.F. No. 5; N.T. at 7.

However, once certified, to actually function as an Advanced EMT, Claimant needed to obtain an authorization from a hospital, known as "medical command."[2] *See* F.F. No. 6; N.T. at 7. After Claimant became Advanced EMT certified, Employer periodically checked in on his progress toward the medical command authorization, which appeared to be taking longer than expected. *See* F.F. No. 8; N.T. at 8. Employer attempted to help Claimant by providing contact information for the hospital that authorized its medical command. *See* N.T. at 7-8. Despite the fact that obtaining medical command was usually a brief process completed within approximately one week, Claimant was unable, after a period of months, to obtain medical command authorization and was not functioning at the skill level required to attain the medical command authorization. *See* F.F. No. 7; N.T. at 7-8, 22. Employer felt Claimant's inability to attain the medical command authorization necessary to function as an Advanced EMT was due to Claimant's lack of initiative. *See* F.F. No. 9; N.T. at 8. Employer was also displeased with Claimant over other things, including violation of Employer's Dress Code & Personal Appearance Policy (Uniform Policy) contained in the Employer's Employee

---

[2] Acquiring medical command authorization requires that a candidate, under the supervision of a physician, perform a minimum of 10 pre-hospital calls functioning on the advanced life support level and demonstrating proficiency in certain skills including starting IVs and administering medication. *See* F.F. No. 6; N.T. at 7.

Handbook, a posting Claimant made on social media that Employer construed as Claimant seeking other work, and an email sent by Claimant in which he expressed various frustrations over his working conditions. *See* F.F. No. 10-11; N.T. at 9-11.[3] Eventually, Employer terminated Claimant's employment. F.F. No. 13.

## II. Issues

Employer contends that the Board erred in reversing the referee's determination that Claimant was ineligible for UC benefits under section 402(e) of the Law and in granting Claimant UC benefits.[4] *See* Claimant's Br. at 2-4 & 14-24.

---

[3] For his part, Claimant felt he was being harassed by Employer, and sent a message to Employer stating as much. *See* F.F. No. 12.

[4] Employer states its claims as nine separate issues as follows:

> 1. Are the Board's findings supported by substantial evidence?
>
> 2. Does the evidence of record support a finding of willful misconduct on the part of [Claimant]?
>
> 3. Are the Board's Findings of Fact Nos. 3, 5, 7, 8, 9, 10, 11, and 13 supported by substantial evidence?
>
> 4. Did the Board commit an error of law in concluding that [Claimant's] conduct failed to rise to the level of willful misconduct, as he deliberately violated several of [] Employer's reasonable work rules without good cause?
>
> 5. Did the Board err in concluding that [] Employer terminated [Claimant] for incompetence, inexperience, or inability to perform a job generally when, in reality, he was terminated for violating several of [] Employer's reasonable work rules without good cause?
>
> 6. Did the Board err in concluding that [] Employer did not meet its burden of proving willful misconduct?
>
> 7. Did the Board err in failing to address that [Claimant's] deliberate violations of [] Employer's work rules were not supported by good cause?

Specifically, Employer argues that it met its burden of proving willful misconduct rendering Claimant ineligible for benefits under section 402(e) and that Claimant cannot prove good cause for his misconduct. *See id.* at 14-22.

### III. Discussion

Initially, we note that

> the Board, not the referee, is the ultimate fact finding body and arbiter of credibility in UC cases. Questions of credibility and the resolution of evidentiary conflicts are within the discretion of the Board and are not subject to re-evaluation on judicial review. The Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief. We are bound by the Board's findings so long as there is substantial evidence in the record, taken as a whole, supporting those findings.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1227-28 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e). The question of whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Reading Area Water Auth. v. Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016).

8. Did the Board err in other ways not specifically identified above when reaching its holding that [Claimant] was not ineligible for benefits pursuant to [s]ection 402(e) of the [] Law?

9. Is it beyond that Court's scope of review to disturb the Board's determinations and reweigh the evidence of record?

Employer's Br. at 2-4.

5

For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with his work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). This Court has defined willful misconduct as:

> (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or[] (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights*, 173 A.3d at 1228 (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)). Once the employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to prove good cause for his actions. *Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

"Where an employer seeks to deny UC benefits based on a work-rule violation, the employer must prove the existence of a work rule, the reasonableness of the rule and the employee's violation of the rule." *Waverly Heights*, 173 A.3d at 1228 (internal citation omitted). An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 55 (Pa. Cmwlth. 2016). "Thus, a determination of what amounts to willful misconduct requires a consideration of all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947-48 (Pa. Cmwlth. 2004) (internal quotation marks and citation

6

omitted). Where the employee's action is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct. *Id*. at 948.

As the prevailing party below, Claimant is entitled to the benefit of all reasonable inferences drawn from the evidence on review. *See Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

Here, Employer claims to have terminated Claimant for workplace rule violations, including insubordination. *See* Employer Br. at 14. Specifically, Employer claims it terminated Claimant for violating the Uniform Policy, searching for a new job in violation of Employer's policies, and insubordination in the form of a ranting email. *See id.* at 16. Employer's witnesses, including Employer's President, Thomas Bruce, testified that these rules existed, that they were known to Claimant, and that Claimant was terminated for specific infractions of the rules, which Employer viewed as instances of insubordination. *See* N.T. at 2-20. However, much of the testimony and documentation before the referee concentrated on Claimant's attempts – and ultimate failure – to become authorized to function as an Advanced EMT. *See* N.T. at 2-30.

The Board reviewed and interpreted the evidence presented and determined that "[E]mployer's motivation for discharge, the actual cause, stem[med] from its disappointment over [C]laimant not functioning at an [A]dvanced EMT level." Board Decision at 2. The Board noted, however, that Claimant paid for the Advanced EMT course with his own funds, that Claimant had not been hired by Employer to work as an Advanced EMT, and that Claimant was not working as an Advanced EMT at the time of his discharge. *See id.* The Board found that Employer had "discharged [C]laimant because it felt it was bending over backward and [] not getting anything in return" regarding his failure to become a fully authorized

7

Advanced EMT. *Id.* at 2. Based on these findings, the Board concluded that Claimant's discharge was not caused by willful misconduct connected to his work. *See id.* at 2-3. Accordingly, the Board determined that Employer failed to prove that Claimant engaged in willful misconduct for the purpose of ruling him ineligible for UC benefits under section 402(e) of the Law and granted UC benefits.[5] *See id.* at 3.

These evidentiary determinations and conclusions were within the Board's discretion as the ultimate fact finder and are supported by substantial evidence adduced at the hearing on this matter. While other fact finders could have ruled otherwise on the facts presented, because the Board's findings and conclusions are supported by substantial evidence, we are bound thereby and decline Employer's invitation to reweigh the evidence. *See Waverly Heights*, 173 A.3d at 1227-28. Accordingly, we affirm the Board's decision reversing the referee's decision and finding Claimant not ineligible for UC benefits under section 402(e) of the Law.[6]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] The Board acknowledged an employer's right to terminate an employee for any reason, but observed that a critical distinction exists between an employer's right to terminate an employee and the state's right to deny UC benefits. *See* Board Decision at 3.

[6] Because we find that the Board's determination that Claimant's discharge was not caused by his willful misconduct connected to his work was supported by substantial evidence, we need not address whether Claimant had good cause for his conduct.

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fort Cherry Ambulance Service,    :
                 Petitioner    :
                       :

        v.                 :

                       :
Unemployment Compensation    :
Board of Review,            :    No. 642 C.D. 2021
             Respondent    :

## O R D E R

AND NOW, this 19th day of May, 2022, the May 14, 2021 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge